**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CANDEE A. DOTSON,**

                                        **Plaintiff,**

        **vs.**                                        **1:16-CV-0580**
                                                        **(MAD/CFH)**

**NEW YORK STATE WORKERS**
**COMPENSATION BOARD,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**LAW OFFICES OF PATRICK SORSBY**        **PATRICK SORSBY, ESQ.**
1568 Central Avenue - 1st Floor
Albany, New York 12205
Attorney for Plaintiff

**NEW YORK STATE ATTORNEY**              **SHANNAN KRASNOKUTSKI, ESQ.**
**GENERAL - ALBANY OFFICE**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Candee A. Dotson commenced the present action against the New York State

Workers Compensation Board ("WCB") alleging discrimination, retaliation, and hostile work

environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.  See* Dkt. No. 1.

Presently before the Court is Defendant's motion for summary judgment.  *See* Dkt. No. 21.  For

the following reasons, Defendant's motion is granted.

### II. BACKGROUND

Unless otherwise indicated, the facts set forth below are drawn from Defendant's statement of material facts.  Local Rule 7.1(a)(3) sets forth the Northern District's rules for summary judgment motions.  The rule requires the moving party to submit a statement of material facts ("SMF") "about which the moving party contends there exists no genuine issue," and each fact asserted must include a specific citation to the record.  *See* L.R. 7.1(a)(3).  The opposing party must file a response to the SMF admitting or denying each of the movant's factual assertions and "[e]ach denial shall set forth a specific citation to the record where the factual issue arises." *See id.*  The Local Rules specifically state that the "Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See id.*

In this case, Defendant filed an SMF, and Plaintiff submitted a response to the SMF.  *See* Dkt. Nos. 22, 29.  Plaintiff's response denies many of Defendant's factual assertions, but Plaintiff almost entirely fails to cite to the record identifying where the factual issue arises.  To the extent that Plaintiff denies properly supported factual assertions without citing to the record, the Court deems those assertions admitted.  *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (upholding the district court's decision to deem admitted any facts properly set forth in the movant's SMF that were not specifically controverted by the nonmovant's response); *Meaney v. CHS Aquisition Corp.*, 103 F. Supp. 2d 104, 109-10 (N.D.N.Y. 2000) ("Because the nonmovant . . . has failed to comply with the requirements of L.R. 7.1(a)(3), and to controvert with specificity the facts set forth in [the movant's] Statement of Material Facts, the Court will deem admitted as uncontroverted all the

facts properly set forth").  The Court will not sift through the 1074 pages of documents attached

to Plaintiff's opposition to determine whether Plaintiff's denials are supported in the record.[1]

## A.    WCB Standards

Plaintiff is an African-American woman who was employed by the WCB for

approximately seventeen years.  *See* Dkt. No. 22 at ¶¶ 1-2.  Plaintiff worked as a stenographer, or

Verbatim Reporter I, and was supervised by people holding the position of Verbatim Reporter II.

*See id.* at ¶¶ 2-3.  From 2005 to 2010, Plaintiff was supervised by Linda Engel, and from 2010

until her termination in March 2016, Plaintiff was supervised by Deborah Layaou.  *See id.* at

¶¶ 3-6.

As a Verbatim Reporter I, Plaintiff recorded WCB proceedings using a stenograph

machine.  *See id.* at ¶ 28.  Transcripts of proceedings may be requested by parties related to the

WCB ("WCB Parties") or by any non-WCB party of interest to the hearing ("Outside Parties").

*See id.* at ¶ 29.  WCB Parties may request transcripts free of charge, but a Verbatim Reporter I

may charge a transcript fee to Outside Parties.  *See id.* at ¶¶ 31-32.  That transcript fee is separate

from a Verbatim Reporter's civil service salary, and the Verbatim Reporters are not required to

split the fee with the WCB.  *See id.* at ¶¶ 33-35.  Verbatim Reporters may prepare transcripts of

hearings for Outside Parties using WCB computers during work hours, but only if their other

work is up to date.  *See id.* at ¶ 36.  In contrast, Verbatim Reporters may prepare transcripts of

---

[1] The Court also notes that Plaintiff improperly submitted voluminous documents along with her opposition.  For example, Plaintiff describes her Exhibit 10 as "copies of deposition Exhibits 1 through 45 which are exhibits for the Defendants [sic] Depositions supra."  Dkt. No. 28 at ¶ 12.  Plaintiff's Exhibit 10 is 345 pages.  *See* Dkt. No. 28-10.  It is the job of Plaintiff's counsel—not the Court—to review depositions and discovery responses, determine which portions are relevant, and submit only the relevant documents to the Court.

depositions for Outside Parties, but they may not do so during work hours or using WCB equipment. *See id.* at ¶ 38.

There are various standards regulating the conduct of Verbatim Reporters that provide guidance on using WCB supplies and equipment in furtherance of private business. Those standards are provided by (1) the New York Public Officers Law ("NYPOL"), (2) the WCB Policy on Thefts in the Workplace, (3) the Verbatim Reporter Work Standards, and (4) the WCB Standards on Conflict of Interest and Outside Employment. *See id.* at ¶¶ 39-50. First, New York Public Officers Law provides:

> No officer or employee of a state agency, member of the legislature or legislative employee should use or attempt to use his or her official position to secure unwarranted privileges or exemptions for himself or herself or others, including but not limited to, the misappropriation to himself, herself or to others of the property, services or other resources of the state for private business or other compensated non-governmental purposes.

N.Y Pub. Off. L. § 74(3)(d). All WCB employees received an ethics training regarding the NYPOL in 2007, as well as a follow-up e-mail in 2010. *See* Dkt. No. 22 at ¶¶ 42-43. The email stated that the NYPOL's prohibition on misappropriation "includes, but is not limited to, telephones, copiers, fax machines, computers, software, paper, email, office supplies, postage, courier services, internet access, and fellow employees." Dkt. No. 21-11 at 1.

Second, the WCB Policy on Thefts in the Workplace was emailed to all employees in 2009. *See* Dkt. No. 22 at ¶ 45. The policy states that "[e]xamples of employee theft include but are not limited to: conducting personal business on state time; using state equipment, materials or vehicles for personal business; improper use of the mail copiers, fax machines . . . and personal use of stationary, supplies, postage, and any other state owned resource." Dkt. No. 21-12 at 1. Third, the Verbatim Reporter Work Standards also clearly state that Verbatim Reporters may not

work on deposition transcripts at WCB facilities and that "[t]he use of WCB supplies is authorized only for WCB assigned work." Dkt. No. 21-13 at 2. Finally, the WCB Standards on Conflict of Interest and Outside Employment state that WCB employees may engage in outside employment provided that "employees do not utilize any Board facilities, resources or services to further such activities, including but not limited to the use of telephone, email, internet, office supplies, postage, photocopying machines, computers, Board data, information technology and resources, or support staff assistance." Dkt. No. 21-14 at 2.

**B.    Plaintiff's Violations**

On May 11, 2015, a WCB mailroom employee found four WCB envelopes—including one unaddressed envelope—in an outgoing mail bin. *See* Dkt. No. 22 at ¶ 65. Because the unaddressed envelope contained a hearing transcript bearing Plaintiff's name, the mailroom employee brought the envelope to Layaou. *See* Dkt. No. 22-1 at ¶¶ 20-21. Eventually, the issue was brought to the HR Department, which commenced an investigation into the incident. *See* Dkt. No. 22 at ¶¶ 70-71. As part of that investigation, the HR Department directed Layaou to collect any envelopes reflecting additional attempts by Plaintiff to violate WCB policies. *See id.* at ¶ 72. Between May 11, 2015 and May 29, 2015, Layaou collected twenty-two such envelopes. *See id.* at ¶ 73.

On June 3, 2015, Plaintiff was interrogated by an HR Department employee regarding Plaintiff's use of WCB supplies and mail facilities. *See id.* at. ¶ 74. Following the hearing, the HR Department employee emailed Layaou and asked her to remove Plaintiff from any future scheduled hearings. *See id.* at ¶ 77. On June 29, 2015, the WCB's Director of Human Resources issued a Notice of Discipline against Plaintiff proposing Plaintiff's termination. *See id.* at ¶¶ 80-81. Plaintiff filed a grievance pursuant to the contract with her union, and her case was referred

to an arbitrator. *See id.* at ¶¶ 82-83.  On August 7, 2015, Layaou discovered an invoice bearing

Plaintiff's name, which related to the faxing of a 34-page document. *See id.* at ¶ 84. On August

13, 2015, Plaintiff was interrogated by an HR Department employee regarding Plaintiff's use of

the fax machine. *See id.* at ¶ 87.  On August 13, 2015, Plaintiff was suspended without pay and

the HR Department issued another Notice of Discipline proposing Plaintiff's termination. *See id.*

at ¶ 90.  Once again, Plaintiff filed a grievance and the issue was referred to arbitration. *See id.* at

¶ 92.  At various times throughout the interrogations and arbitration hearings, Plaintiff admitted

that she knowingly violated WCB policy and made a conscious decision to disobey her

supervisor. *See* Dkt. No. 21-35 at 41; Dkt. No. 21-20 at 6-7.

On March 7, 2016, the arbitrator reviewing the August Notice of Discipline issued an

opinion upholding the penalty of termination. *See id.* at ¶ 94.  In the opinion, the arbitrator noted:

> Not only do the proofs in the exhibits and many witnesses stand,
> but even Grievant herself admitted that she was engaged in the
> actions alleged in the charges.  The only distinction is that Grievant
> maintains that she has done nothing wrong.  Grievant stood in this
> conviction as a witness at hearing, and Grievant has given no
> indiction that if given another chance she would follow the correct
> rules of the Workers Compensation Board.  Grievant gave no
> promise that she would stop these practices if she was returned to
> work.

Dkt. No. 21-23 at 14.  On March 8, 2016, the WCB terminated Plaintiff's employment. *See* Dkt.

No. 22 at ¶ 96.  The union subsequently withdrew its representation of Plaintiff in the arbitration

proceedings related to the June Notice of Discipline. *See id.* at ¶ 97.  Because Plaintiff did not

pay certain costs associated with the arbitration proceedings, no opinion was ever issued in regard

to the June Notice of Discipline. *See id.* at ¶ 99.

**C.**    **Allegations of Discrimination**

In the complaint, Plaintiff alleges that she was subject to discrimination because of her race. Virtually all of Plaintiff's allegations of discrimination revolve around her treatment at the hands of Layaou. Plaintiff alleges that "[e]arly on in Plaintiff's career" with WCB, Layaou told Plaintiff that "there are niggers and black people and I consider you a black person." Dkt. No. 1 at ¶ 9. Layaou denies that she ever made that statement. *See* Dkt. No. 21-1 at ¶ 37.

Plaintiff makes a number of other allegations of mistreatment by Layaou, none of which were explicitly related to race, but Plaintiff implies that they were racially motivated. For example, Plaintiff alleges that Layaou assigned more work to white Verbatim Reporters than she did to Plaintiff. *See id.* at ¶ 24. Additionally, the complaint references several other incidents, including the following: (1) on one occasion Layaou said to Plaintiff, "[g]et away from me," *id.* at ¶ 17; (2) Layaou once "called the Plaintiff's home at 8:00 AM on a Saturday morning in February 2015 to intimidate and harass her," *id.* at ¶ 21; and (3) "on a number of occasions [Layaou] would purposely step in front of [Plaintiff] and laugh at her," *id.* at ¶ 11. Layaou denies each of these allegations, though she admits to calling Plaintiff's home on a Saturday morning in February 2014 to advise Plaintiff of a coworker's daughter's funeral. *See* Dkt. No. 21-1 at ¶¶ 39-48. Layaou provides a copy of her cell phone records showing a call to Plaintiff's home on Saturday, February 15, 2014. *See* Dkt. No. 21-7 at 1.

Finally, Plaintiff argues in her opposition that a white Verbatim Reporter I received a far lighter punishment for similar conduct. *See* Dkt. No. 30 at 10-17. In May 2009, a white Verbatim Reporter I ("JC") in Rochester, New York, was accused of using WCB envelopes and postage to mail out invoices and transcripts. *See* Dkt. No. 22 at ¶ 60.[2] JC was accused of

---

[2] JC was also charged with falsifying her time sheet by using sick leave accruals to attend a deposition. *See* Dkt. No. 21-15. Plaintiff was not charged with falsifying her time sheet in the June 29, 2015 Notice of Discipline or the August 18, 2015 Notice of Discipline. *See* Dkt. Nos.

violating the WCB Standards on Conflict of Interest and Outside employment, as well as the New York Public Officers Law. *See* Dkt. No. 22-15 at 5-7.[3]  In a Notice of Discipline issued by then-Director of Human Resources Lisa Sunkes, the proposed penalty for JC's conduct was a sixty-day suspension without pay. *See id.* at 5.  Eventually, JC and the WCB reached a settlement agreement wherein JC agreed to a ten-day suspension without pay and a twelve-month disciplinary probation period. *See* Dkt. No. 21-16.

On June 23, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against the WCB and Layaou. *See* Dkt. No. 23 at ¶ 23.  Plaintiff alleged that Layaou had assigned Plaintiff to unfavorable tasks, intentionally failed to communicate with Plaintiff, and attempted to intimidate Plaintiff because of Plaintiff's race. *See* Dkt. No. 21-30 at 1-2.  After investigating Plaintiff's complaint, NYSDHR issued a determination of "no probable cause to believe that the respondents [engaged in] the discriminatory practice complained of." Dkt. No. 21-31 at 1.  On August 26, 2015, Plaintiff filed a second NYSDHR complaint, this time alleging that her August 13, 2015 suspension—which WCB claimed was due to her unauthorized use of the fax machine—was issued in retaliation for Plaintiff's June 2015 NYSDHR complaint. *See* Dkt. No. 21-32 at 1.  NYSDHR once again issued a determination of no probable cause and dismissed Plaintiff's complaint. *See* Dkt. No. 21-33 at 1.

### III. LEGAL STANDARD

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue

---

21-19, 21-22.

[3] The cited page numbers for this docket entry refer to those assigned by the Court's electronic filing system ("ECF").

warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment.  Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims.  *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

### IV. DISCUSSION

A.    **Discrimination**

"Title VII provides that it is 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or natural origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e–3(a)).  Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, a plaintiff must first make a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).  "Once an employee makes a prima facie case of [discrimination], the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).  Finally, if the employer is able to provide such a reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race discrimination."  *See id.*

   *1. Prima Facie Case*

   In this case, Defendant concedes that Plaintiff has established the first three elements of her prima facie case. *See* Dkt. No. 21-19 at 12.  Plaintiff is African-American, she was qualified for her position as a Verbatim Reporter I, and she suffered multiple adverse employment actions—she was removed from calendar duties, she was suspended, and she was eventually terminated.  Therefore, the only element in question is whether the circumstances of the adverse employment actions give rise to an inference of discrimination.  Plaintiff provides the following

evidence to support an inference of discrimination: (1) Layaou's racially discriminatory behavior, and (2) the disparate treatment of JC.

First, Plaintiff alleges in the complaint that Layaou racially discriminated against Plaintiff throughout her employment. Perhaps the most egregious conduct alleged by a Plaintiff is a racially discriminatory statement attributed to Layaou from "[e]arly on in Plaintiff's career" with the WCB, which began in 1998. Dkt. No. 1 at ¶ 9. Therefore, the statement—which Layaou denies making—was from approximately seventeen years before the employment actions in question, which undercuts any inference of discrimination. *See Haseman v. United Parcel Service of Am.*, No. 11-CV-554, 2013 WL 696424, *7 (D. Conn. Feb. 26, 2013) ("Comments too remote in time and context cannot support an inference of discriminatory intent"); *Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 336 (S.D.N.Y. 2011) ("Although a reasonable juror could find that the remark itself was discriminatory, it was too remote in time and context to support a reasonable inference that [plaintiff's] discharge was a result of race discrimination").

Plaintiff also alleges that she was consistently mistreated by Layaou during her time with the WCB, and that the mistreatment was due to racial discrimination. *See* Dkt. No. 1 at ¶¶ 9-25. However, many of Plaintiff's allegations do not stand up to scrutiny. For example Plaintiff alleges that Layaou assigned less work to Plaintiff than to her white coworkers. *See* Dkt. No. 1 at ¶ 24. But between August 2014 and June 2015, Plaintiff was fifth (of eight Verbatim Reporter I employees) in half-day calendar assignments per month, and she was second in the average number of transcription pages received per month. *See* Dkt. No. 22 at ¶¶ 118-20. Other allegations simply do not make sense. *See* Dkt. No. 1 at ¶ 15 ("When Ms. Dotson answered call's [sic] Supervisor Layaou would say 'Candee it's a man repeatedly'. The person on the other side

11

could hear this").  "Such isolated events over an extended period of time have little intrinsic probative value." *Patterson v. County of Oneida*, 375 F.3d 206, 222 (2d Cir. 2004).

Additionally, the limited probative value of those events is further undercut by the fact that Layaou did not have the power to initiate disciplinary proceedings or terminate Verbatim Reporters.  *See* Dkt. No. 22 at 19.  Comments made by a co-worker are not sufficient to establish an inference of discrimination with respect to a plaintiff's termination where that co-worker was not involved in the decision-making process.  *See Patterson*, 375 F.3d at 221-23 (holding that the plaintiff failed to raise an inference of discrimination where he showed a pattern of racially discriminatory comments by co-workers but provided no evidence that the decision-makers engaged in discrimination); *see also Howe v. Town of Hempstead*, No. 04-CV-656, 2006 WL 3095819, *7 (E.D.N.Y. Oct. 30, 2006) ("Racist comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action.  This connection exists if the comments were made by the decision-maker or by someone who had great influence over the decision maker" (citation omitted)).  Although Layaou was involved in the investigation insofar as she reported Plaintiff's activity and was instructed to collect envelopes, it is not clear that she had great influence over the decision-makers.

Second, Plaintiff attempts to create an inference of discrimination by comparing her situation to that of JC, a Verbatim Reporter I who was similarly accused of using WCB envelopes and postage for mailing transcripts to Outside Parties.  *See* Dkt. No. 22 at ¶ 60.  As a punishment, JC received a ten-day suspension without pay and one year of probation.  *See id.* at ¶ 64.  According to Plaintiff, the fact that JC received a lighter punishment than Plaintiff for similar conduct is sufficient to give rise to an inference of discrimination.  *See* Dkt. No. 30 at 14.

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). The circumstances of the similarly situated employees need not be identical, but "the comparators must be similarly situated to the plaintiff 'in all material respects.'" *Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 271-72 (E.D.N.Y. 2017) (quoting *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). "What constitutes 'all material respects' therefore varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Here, Plaintiff and JC were not similarly situated in all material respects. There are at least three important differences between Plaintiff and JC. First, JC's conduct took place approximately six years before Plaintiff's, and JC and Plaintiff were disciplined by different decision-makers. *See Lifranc v. N.Y.C. Dep't of Educ.*, No. 07-CV-1109, 2010 WL 1330136, *16 (E.D.N.Y. Apr. 6, 2010) (finding that a comparator was not similarly situated in part because he was "disciplined at a different time than 2006 (2003), by different decision-makers"). Second, the WCB Policy on Thefts in the Workplace, which is one of the rules under which Plaintiff was disciplined, was not in place at the time of JC's conduct. *See* Dkt. No. 22 at ¶ 63. As the Court notes above, comparators are not "similarly situated in all material respects" if they were subject to different workplace standards. *See Graham*, 230 F.3d at 40. Third, as the arbitrator stated in

her decision upholding Plaintiff's termination, Plaintiff "maintains that she has done nothing wrong," and she "gave no promise that she would stop these practices if she returned to work." Dkt. No. 21-23 at 14. For that reason, the WCB's Chief of Adjudication—who does not normally make recommendations regarding employee disciplinary proceedings—recommended Plaintiff's termination due to Plaintiff's behavior at her June 3, 2015 interrogation. *See* Dkt. No. 21-25 at ¶ 18. In contrast, JC admitted culpability and came to a settlement agreement that reduced her suspension from sixty days to ten days. *See* Dkt. No. 22 at ¶ 64.

In the end, the evidence that Plaintiff puts forth in order to raise an inference of discrimination—Layaou's treatment of Plaintiff and the disparate treatment of JC—is not particularly strong. But even if Plaintiff had established her prima facie case of discrimination, Defendant has provided legitimate nondiscriminatory reasons for the adverse employment actions, and Plaintiff has not shown those reasons to be pretextual.

### 2. Legitimate Nondiscriminatory Reason

On two different occasions, Plaintiff was caught violating laws and policies governing her conduct in the workplace. First, she used WCB envelopes and postage to mail invoices and hearing transcripts to Outside Parties, and apparently she did so regularly. Second, Plaintiff used a WCB fax machine to transmit a thirty-four-page document for private business. In engaging in that conduct, Plaintiff violated at least four different rules or laws prohibiting WCB employees from using WCB supplies and equipment in outside business: New York Public Officers Law § 74(3)(d), the WCB Policy on Thefts in the Workplace, the WCB Policy on Verbatim Reporter Work Standards, and the WCB Standards on Conflict of Interest and Outside Employment. As Defendant has provided a legitimate nondiscriminatory reason for the adverse employment

actions, the burden shifts back to Plaintiff to show that Defendant's reason was a pretext for discrimination.

    *3. Pretext*

    To establish pretext and avoid summary judgment, a plaintiff must come forward with evidence from which a reasonable jury could conclude that the nondiscriminatory reason offered by the defendant is a pretext for discrimination. *See Holcomb v. Iona College*, 521 F.3d 130, 141 (2d Cir. 2008). A plaintiff "is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating factors.'" *See id.* at 138 (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)). At the pretext stage of the burden-shifting analysis, "[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent." *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 313 (E.D.N.Y. 2014) (quoting *Henry v. N.Y. State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012)).

    To show pretext, Plaintiff depends almost entirely upon the supposedly disparate treatment of JC. *See* Dkt. No. 30 at 17-20; *see also Graham*, 230 F.3d at 43 ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination"). However, for the reasons stated above, the Court rejects that argument. Additionally, Plaintiff was terminated after a ruling by an independent adjudicator, which "is highly probative of the absence of discriminatory intent in that termination." *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). Even when the record is viewed in the light most favorable to Plaintiff, no reasonable

jury could find that Defendant's asserted reasons for the adverse employment actions were merely a pretext for discrimination.  Therefore, Plaintiff's discrimination claim is dismissed.

**B.    Retaliation**

Claims of retaliation for engaging in an activity protected conduct under Title VII are also analyzed under the three-step, burden-shifting framework articulated in *McDonnell Douglas*.  *See Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 191 (E.D.N.Y. 2013).  Pursuant to that framework, a plaintiff must first establish a prima facie case of retaliation.  *See id.*  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory reason for its actions." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995).  If the employer is successful at the second step, the plaintiff must establish that but for the protected activity employer would not have taken the adverse action against the plaintiff. *Dall*, 966 F. Supp. 2d at 191 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

To state a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she was engaged in a protected activity by opposing a practice that is made unlawful by Title VII; (2) her employer was aware of the protected activity; (3) she was subjected to adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.33 10, 14 (2d Cir. 2013) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012)).  Plaintiff argues that she engaged in protected activity on two different occasions.  First, during her June 3, 2015 interrogation, Plaintiff complained of racial discrimination.  *See* Dkt. No. 30 at 22.  Second, on June 23, 2015, Plaintiff filed a complaint with NYSDHR.  *See id.*

*1. Statements at the June Interrogation*

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quoting 42 U.S.C. § 2000e-5 (2000)). "In addition, the claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Id.* at 69 (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).

"[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998) (quoting *Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir. 1985)). "Although the exhaustion of administrative remedies through filing with the EEOC is not a jurisdictional requirement, 'it remains . . . an essential element of Title VII's statutory scheme . . . and one with which defendants are entitled to insist that plaintiffs comply.'" *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 205 (E.D.N.Y. 2006) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).

In this case, Plaintiff made accusations of racial discrimination during her June 3, 2015 interrogation.[4]  Plaintiff now argues that those statements were protected activity for the purposes

---

[4] For example, when Plaintiff was asked why she used WCB envelopes to send out invoices and transcripts to parties, she responded in part: "I kept doing it.  Why did I keep doing it?  Because I have suffered harassment and abuse and discrimination from Linda Engle and the Board since I've been working here."  Dkt. No. 21-18 at 47.

of stating a prima facie claim for retaliation, but Plaintiff did not mention the statements or the June 3, 2015 interrogation in her complaints to NYSDHR. *See* Dkt. No. 21-32. While "a district court may 'hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge,'" *Danials-Kirisits v. N.Y. State Office of Court Admin.*, No. 05-CV-800, 2013 WL 1755663, *5 (W.D.N.Y. Apr. 24, 2013) (quoting *Butts*, 990 F.2d at1401), a plaintiff has a "'duty to include all relevant alleged discriminatory conduct when she file[s] the EEOC charge,'" *id.* (quoting *Townsend v. Exchange Ins. Co.*, 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002)).

A plaintiff may not rely in federal court on "additional specific instances of misconduct that . . . occurred prior to the filing of [her EEOC] charges" but which were not alleged in those charges. *Id.*; *see also Lester v. M&M Knopf Auto Parts*, No. 04-CV-850, 2006 WL 2806465, *7 (W.D.N.Y. Sept. 28, 2006) ("None of the other layoffs are referenced in the Charges, nor can they be construed as 'reasonably related' to the January 22, 2004 layoff because they predate it"); *Samborski v. W. Valley Nuclear Servs. Co., Inc.*, No. 99-CV-213, 2002 WL 1477610, *5 (W.D.N.Y. June 25, 2002) ("Samborski may not rely on any alleged conduct that occurred before January 5, 1999 other than [that] referenced in her EEOC charge"). Accordingly, the Court will not consider conduct that occurred before Plaintiff's second NYSDHR complaint was filed on August 26, 2015, unless the conduct was addressed in one of Plaintiff's NYSDHR complaints.

### 2. NYSDHR Complaint

On June 23, 2015, Plaintiff filed her first complaint with NYSDHR. Here, Plaintiff satisfies the four elements of a prima facie retaliation claim: (1) she engaged in protected activity by submitting a complaint to NYSDHR; (2) the WCB was aware of the activity; (3) she was subsequently subject to adverse employment actions when she was suspended and eventually

terminated; and (4) she was suspended without pay on August 13, 2015, less than two months

after Plaintiff filed her complaint. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d

Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima

facie case, the outer limits beyond which a temporal relationship is too attenuated to establish

causation, we have previously held that five months is not too long to find the causal

relationship").

 "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts

to the employer to articulate some legitimate, non-retaliatory reason for the employment action."

*Zaan Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013).  Here, Defendant provides

legitimate, nonretaliatory reasons for suspending and later terminating Plaintiff's employment.

First, Plaintiff violated at least four different rules or laws prohibiting WCB employees from

using WCB supplies and equipment in outside business.  As a result, Plaintiff was issued a Notice

of Discipline and removed from calendar duties in late June 2015.  *See* Dkt. No. 22 at ¶ 78.  When

Plaintiff was caught using the fax machine for personal business in August 2015, she was

suspended.  *See id.* at ¶ 89.  Finally, after arbitration proceedings, Plaintiff was terminated on

March 8, 2016.  *See id.* at ¶ 96.

 "Under the *McDonnell Douglas* framework, after the defendant has articulated a non-

retaliatory reason for the employment action, the presumption of retaliation arising from the

establishment of the prima facie case drops from the picture." *Zann Kwan*, 737 F.3d at 845.  The

burden then shifts back to the plaintiff to come forward with evidence that the non-retaliatory

reason is a mere pretext for discrimination.  *Id.*  At this point, a plaintiff must show that the

protected activity was a "but for" cause of the employer's adverse action.  *See Vega v. Hempstead

Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015).  "It is not enough that retaliation was a

'substantial' or 'motivating' factor in the employer's decision." *Id.* "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradiction in the employer's proffered legitimate, non-retaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846. Here, Plaintiff has failed to provide any such evidence undermining Defendant's legitimate non-retaliatory reasons. Viewing the evidence in the light most favorable to Plaintiff, as the Court must at this stage, there is no issue of fact as to whether the legitimate, non-discriminatory reasons for the adverse actions were a pretext for discrimination. Therefore, Plaintiff's retaliation claim is dismissed.

**C.    Hostile Work Environment and New York Human Rights Law**

Defendant moved for summary judgment as to Plaintiff's hostile work environment claim and all of Plaintiff's state law claims. "A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Martinez v. City of New York*, No. 11-CV-7461, 2012 WL 6062551, *1 (S.D.N.Y. Dec. 6, 2012) (quoting *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)). When a defendant files a summary judgment motion, "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). Since Plaintiff's opposition did not mention her hostile work environment or state law claims, the Court deems those claims abandoned.

**V. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 21) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment dismissing this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 6, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

21